UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEMONDRAY D. MAYO,<br>Petitioner,<br>v.<br>NEVADA, STATE OF, *et al.*,<br>Respondents. | Case No. 3:09-cv-00316-MMD-WGC<br>ORDER |

**I.   SUMMARY**

Before the Court is Petitioner Demondray D. Mayo's first-amended 28 U.S.C. § 2254 habeas petition for adjudication on the merits (ECF No. 17).

**II.   BACKGROUND & PROCEDURAL HISTORY**

On September 6, 2006, Mayo pleaded guilty to second-degree murder with use of a deadly weapon. (ECF No. 19-7.) He was sixteen at the time of the crime and seventeen when the state district court sentenced him to a term of life with the possibility of parole after ten years, with an equal and consecutive term of life with the possibility of parole after ten years for the deadly weapon enhancement, with 629 days' credit for time served. (ECF No. 19-25.) The court entered the judgment of conviction on April 23, 2007. *Id.*

Mayo filed a motion to correct illegal sentence/withdraw guilty plea on November 9, 2007. (ECF No. 19-26.) The Nevada Supreme Court affirmed the denial of that motion on January 30, 2009, and remittitur issued on February 24, 2009. (ECF No. 20-4; ECF No. 20-6.)

///

Ultimately, the Nevada Supreme Court affirmed Mayo's conviction on November 13, 2013, and remittitur issued on December 10, 2013. (ECF No. 45-25; ECF No. 45-26.) On December 8, 2015, the Nevada Supreme Court affirmed the denial of Mayo's counseled, state postconviction habeas corpus petition, and remittitur issued on January 12, 2016. (ECF No. 47-7; ECF No. 47-8.)

In the meantime, Mayo had dispatched his federal habeas petition for mailing on or about May 25, 2009. (ECF No. 8.) This court granted Mayo's motion for appointment of counsel. (ECF No. 7.) Mayo filed a counseled, first-amended petition. (ECF No. 17.) On June 20, 2011, this court granted Mayo's motion to stay and abey these proceedings pending the conclusion of his state-court proceedings. (ECF No. 39.)

On April 22, 2016, the court granted Mayo's motion to reopen the case. (ECF No. 49.) Respondents have now answered the petition, and Mayo replied. (ECF Nos. 52, 55.)

## III. LEGAL STANDARDS

### A. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no

possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the

state court finding was "clearly erroneous." *Lambert*, 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. Finally, in conducting an AEDPA analysis, this court looks to the last reasoned state-court decision. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).

A state prisoner is entitled to federal habeas relief only if he is being held in custody in violation of the constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable under federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A petitioner may not transform a state-law issue into a federal one merely by asserting a violation of due process. *Langford v. Day*, 110 F.3d 1380, 1381 (9th Cir. 1996). Alleged errors in the interpretation or application of state law do not warrant habeas relief. *Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004).

**B.    Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that

4

counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Id.* at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited

to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105 (internal citations omitted). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

Mayo pleaded guilty upon the advice of counsel, thus he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . . . and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-57, 59; *Lambert*, 393 F.3d at 980-81.

**IV.    INSTANT PETITION**

    **A.    Ground 1**

Mayo asserts that the mandatory deadly weapon enhancement to his sentence pursuant to NRS § 193.165 violated his Fifth Amendment due process right to individualized sentencing. (ECF No. 17 at 6-8.) At the time of the crime, as well as at the time Mayo was sentenced in April 2007, NRS § 193.165 prescribed a mandatory consecutive sentence equal to that imposed for the underlying crime. Effective July 1,

6

2007, the Nevada legislature changed the statute to require the imposition of a consecutive term of one to twenty years for the deadly weapon enhancement and to require that the court state on the record that it had considered several factors in exercising its discretion, including the facts and circumstances of the crime and the offender's criminal history.

In Mayo's reply in support of the petition, he argues that the imposition of the mandatory equal and consecutive sentence for the use of a deadly weapon enhancement on a juvenile violated his right to individualized sentencing and his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 55 at 6-9.)

The Nevada Supreme Court rejected this claim, explaining:

> A few months after sentencing, the Legislature amended NRS [§] 193.165 to eliminate the equal and consecutive sentence required to be imposed for a deadly weapon enhancement. This court has held, however, "that the penalty for the use of a deadly weapon should be the one in effect at the time the defendant used a weapon to commit the primary offense." Because the imposition of an equal and consecutive term was required at the time appellant committed his crime, the district court did not abuse its discretion by imposing it, and appellant does not adequately explain how imposing the enhancement was unconstitutional.

(ECF No. 45-25 at 5-6 (internal citations omitted).)

Mayo now argues that the Nevada Supreme Court's decision was unreasonable in light of the U.S. Supreme Court decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010). In *Graham*, the Court held that a sentence of life without parole for a juvenile for a nonhomicide offense is cruel and unusual punishment in violation of the Eighth Amendment. 560 U.S. at 82. Subsequently, the Court concluded in *Miller* that mandatory life without parole sentences for those under age eighteen at the time of their crimes violate the Eighth Amendment. 567 U.S. at 465; *see also Montgomery v. Louisiana*, 136 S.Ct. 718, 732-34, 736 (2016) (finding that *Miller v. Alabama* announced a substantive rule of constitutional law that is retroactive).

The Court in *Miller* and *Graham* discusses the constitutional requirement of individualized sentencing for defendants facing the most serious penalties. In *Miller*, the

Court held that the confluence of two lines of precedent led it to conclude that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment. 567 U.S. at 470. The Court noted the evolution of a foundational principle that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id.* at 474.

While *Graham* and *Miller* show how federal constitutional law continues to evolve in relation to juvenile offenders, they do not dictate that Mayo is entitled to habeas relief here. Mayo points to no federal constitutional law that has been clearly established by the U.S. Supreme Court that the state district court's imposition of the deadly weapon enhancement mandated by the state statute in force at the time sixteen-year-old Mayo committed his crime violated his federal constitutional rights. In the absence of any such clearly established federal constitutional law, the question of the application of the Nevada statute is purely a state-law issue.

Respondents are correct that Mayo has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 1 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also, e.g.*, *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (holding that, where Supreme Court case law does not give a clear answer to the question presented, state court's decision on the issue must be given deference under § 2254(d)(1)). Federal habeas relief is denied as to ground 1.

### B. Ground 3

Mayo alleges that he did not enter a voluntary, intelligent, and knowing guilty plea in violation of his Fifth and Fourteenth Amendment due process rights due to (1) his intellectual deficits and emotional instability; (2) the impact of prescribed medications on his intellectual functioning; (3) the trial court's failure to accommodate his intellectual

///

limitations during the plea canvass; and (4) the trial court's failure to explain the elements of the charged crimes during the plea canvass. (ECF No. 17 at 10-18.)

A guilty plea must be made knowingly, voluntarily and intelligently; such inquiry focuses on whether the defendant was aware of the direct consequences of his plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A criminal defendant may not plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The competency standard for pleading guilty is the same as the competency standard for standing trial. *Id.* at 397. As long as a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . has a rational as well as factual understanding of the proceedings against him," he is competent to plead guilty. *Dusky v. U.S.*, 362 U.S. 402 (1960); *see also Godinez*, 509 U.S. at 399.

The Nevada Supreme Court rejected this claim on direct appeal:

> On appeal from a district court's denial of a motion to withdraw a guilty plea, this court will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion. Appellant contends that his guilty plea was unknowing and involuntary because he suffered from intellectual deficiencies, including learning disabilities and an IQ of 67, and he was under the influence of antipsychotic and antidepressant medication at the time he entered his plea. After reviewing the pleadings and the entire record, the district court denied appellant's motion on the grounds that there was no showing that his guilty plea was unknowing or involuntary as he has been involved and directing several of the important decisions in his case of his own volition and that appellant's regret or change of heart is insufficient to withdraw the plea. As to appellant's claim that his plea was unknowing and involuntary based on the influence of medication, he did not make that argument in his motion to withdraw his guilty plea below and therefore we need not consider it.

(ECF No. 45-25 at 2-3 (internal citations and quotation marks omitted).)

> Second, in a closely related claim, appellant contends that the district court abused its discretion by not conducting a competency hearing before accepting his guilty plea because the district court should have questioned his competency based on the numerous orders it signed to transport him for psychological evaluation, his alleged intellectual deficiencies described

above, and the influence of medication. However, those matters were insufficient to cause the district court to question his competency and there is no indication in the record that the district court was aware that appellant was on medication at the time of his guilty plea. Further, the district court had the opportunity to observe appellant's demeanor during the plea canvass. We therefore conclude that appellant failed to show that the district court abused its discretion in this regard.

(*Id.* at 3-4 (internal citations and quotation marks omitted).)

In its order affirming the denial of the state postconviction petition, the Nevada Supreme Court also held:

> First, appellant contends that the district court erred by denying his claim that his guilty plea was not knowingly, voluntarily, and intelligently entered because he suffers from intellectual disabilities and was under the influence of medication at the time the plea was entered. We conclude that no relief is warranted. Appellant challenged the validity of his plea on appeal from his judgment of conviction. This court considered and rejected the issues surrounding his intellectual disabilities, and reconsideration of those issues is barred by the law-of-the-case. Regarding appellant's contention that his plea was invalid because it was entered while he was under the influence of medications, appellant does not specify the medications he was taking at the time he entered his plea, the effect they had on his mental state, or how they rendered his plea involuntary. Therefore, appellant fails to demonstrate that the district court erred by denying these claims without conducting an evidentiary hearing.

(ECF No. 47-7 at 2-3 (internal citations and quotation marks omitted).)

During the plea canvass, in response to the Court's questioning, Mayo stated that he understood the charge; he did not need the Court to read the charge aloud again; he had read and understood the entire guilty plea agreement; he understood what rights he was giving up; he had no questions at that time; no one had made him any promises about his sentence; and he was entering into the guilty plea freely and voluntarily. (ECF No. 19-8.) The following exchange occurred:

> The Court: Are you in fact entering a guilty plea today, sir, to second degree murder with use of a deadly weapon because on or about the 5th or, excuse me. On or about or between the 5th day of August, 2006 and the 6th day of August, 2006, here in Clark County, State of Nevada, you did then and there willfully, feloniously, and without authority of law, kill Jesus Escoto-Gonzales, a human being, by shooting him with a firearm yourself and/or aiding and abetting or engaging in a conspiracy where you and another person who provided a firearm to you demanded a wallet and/or money from Jesus Escoto-Gonzales and you shot him and fled the scene of that crime with another person you acted in concert throughout, -

The Defendant: Yes.

The Court: -- meaning the two of you acted together –

The Defendant: Yes.

The Court: -- with purpose?

The Defendant: Yes.

(*Id.* at 7-8.) The court thereafter accepted the plea as freely and voluntarily entered. (*Id.* at 8.)

Prior to the guilty plea agreement, Mayo's counsel had filed a motion to suppress his statement to police. (ECF No. 18-34.) The transcript of the police interview reflects that Mayo was lucid, described his version of events with some detail, and consistently maintained that it was his "supposed" friend, not Mayo, who fired the gun. (*Id.*)

Mayo's counsel filed a sentencing memorandum on September 13, 2006. (ECF No. 19-9.) The memorandum detailed the following: Mayo's father was never in his life; he has three siblings; and none of the children have the same father. Child Protective Services removed the children from their mother, Tanisha Mayo, in 2002. The family was very poor and ultimately Ruby Mayo, their grandmother, took them in. Mayo was diagnosed with a learning disability and placed in special education classes; he dropped out of high school at age fifteen. He was prescribed Seroquel, Prozac and Remeron for depression and sleeping difficulties. Mayo stopped taking Seroquel because it caused blackouts. He suffered physical abuse by his mother's boyfriend from age ten to thirteen. He started abusing drugs at a young age. (*Id.*)

In March 2007, Mayo's counsel filed a supplement to Mayo's *pro se* motion to withdraw guilty plea, stating that when Mayo was in fifth grade, his IQ was determined to be 67, which is considered mildly mentally retarded. (ECF No. 19-21; ECF No. 19-22.)

A February 2004 psychological evaluation by psychologist Michelle A. Granley referred by Spring Mountain Treatment Center was apparently part of the state-court record. (ECF No. 20-25.) It stated the following:

> Demondrey [sic] [age 15 at the time of the test] was administered the Trailmaking Test as a brief neurological screening. He had significant difficulties completing this task and his time was almost double that required of those in his age range. Demondrey was therefore administered the Bender Visual Motor Gestalt Test to further assess for neurological difficulties. He had 9 developmental errors and 7 brain injury scored errors. This resulted in a developmental age range of 5-6 to 5-11 years. This is significant, indicating possible neurological impairment. Additional concerns on the Bender performance included poor planning abilities and the likelihood of impulsiveness, aggression and acting out behaviors . . . . He is likely experiencing some type of neurological dysfunction that should be further evaluated.

(*Id.* at 5, 7.)

The record reflects that Mayo lived a difficult childhood, suffered physical abuse at home, and abused drugs. He also had intellectual and behavioral challenges in school. However, Mayo has not shown that the court had a basis to question his competency to understand and freely enter into the guilty plea. In fact, the plea canvass and the transcript of Mayo's interview with police investigators both belie this contention. Mayo has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 3 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 3 is denied.

### C. Ground 4

Mayo alleges that his plea counsel rendered ineffective assistance when counsel advised seventeen-year-old Mayo to enter into the guilty plea: (1) without thoroughly investigating a defense based on Mayo's severe intellectual deficits and emotional instability; (2) without adequately explaining the agreement and Mayo's alternatives; (3) while incorrectly certifying that Mayo was not under the influence of drugs.

He also argues as ground 4(4) that counsel was ineffective at the plea hearing because he failed to: (a) present pertinent medical and educational records highlighting Mayo's severe intellectual deficits and emotional instability at the time he entered his guilty plea and request accommodations for such disabilities at the plea canvass; and (b)

inform the court of the antipsychotic and antidepressant medications that Mayo was taking at the time of the plea (ECF No. 17 at 18-27).

Considering these claims on direct appeal, the Nevada Supreme Court concluded that based on the record Mayo failed to demonstrate that his counsel had reason to question Mayo's competency, and therefore, he failed to show ineffective assistance. (ECF No. 45-25 at 4-5.)

In affirming the denial of the state postconviction petition, the Nevada Supreme Court reasoned that Mayo failed to identify what alternative defenses counsel should have investigated or what laws counsel should have explained to him before he entered his plea, and failed to explain how requesting an accommodation for his intellectual disabilities during the plea canvass would have caused him to reject the plea. (ECF No. 47-7 at 3.)

As discussed with federal ground 3, these contentions of ineffective assistance of counsel are belied by the record. Mayo has not demonstrated that counsel had a basis to question Mayo's ability to voluntarily and knowingly enter into the guilty plea based on intellectual deficits and/or medication that Mayo was taking at the time. He does not specify what defenses counsel failed to pursue or what other options counsel failed to explain. Mayo has not shown that the Nevada Supreme Court's decision on federal ground 4 was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is, therefore, denied as to ground 4.

**D.     Ground 2**

Mayo contends that counsel was ineffective for (i) failing to object to the mandatory deadly weapon sentencing enhancement; and (ii) failing to appeal the imposition of such sentence. (ECF No. 17 at 8-10.)

Respondents point out that Mayo never presented these claims to the Nevada Supreme Court, and therefore, they are unexhausted. (ECF No. 52 at 10-11.) Mayo

argues that if the claims are unexhausted, they would be procedurally barred as untimely and successive if Mayo attempted to return to state court to present the claims. (ECF No. 55 at 10-12.)

As a general rule, a federal court cannot review a claim that was procedurally defaulted by a state court. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, a claim that was procedurally defaulted by the state court can be considered on the merits by a federal court if a petitioner can show cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). The Court in *Coleman* held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. *Coleman*, 501 U.S. at 750. In *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), the Court established a "narrow exception" to that rule. The Court explained that, under *Martinez*, cause can be established where a defendant did not have counsel during the initial post-conviction proceedings or appointed counsel was ineffective. To demonstrate prejudice under Martinez, a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim is a "substantial one," by showing that it has some merit. *Id.* at 17; *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

Here, Mayo argues that his state postconviction counsel were ineffective for not setting forth the claim that plea counsel was ineffective for failing to object to and appeal the imposition of the mandatory equal and consecutive sentence. For the purposes of the disposition of federal ground 2, this court will assume, without deciding, that Mayo could demonstrate cause if this claim were to be procedurally barred in state court. Nevertheless, he cannot demonstrate prejudice. The claim cannot be considered "substantial" in light of this court's disposition of federal ground 1, Mayo's underlying substantive claim that his mandatory consecutive sentence is unconstitutional. Mayo has not shown that he had an Eighth Amendment right to individualized sentencing, and therefore, he cannot show a reasonable probability of a different outcome had his counsel objected to or appealed the imposition of the mandatory consecutive term required by state law at that time. Thus, ground 2 is denied.

14

1         The Petition, therefore, is denied in its entirety.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Mayo's petition, the Court finds that reasonable jurists may find its decision on ground 3 to be debatable pursuant to S*lack*. The court therefore grants a certificate of appealability with respect to ground 3 only.

## VI. CONCLUSION

It is therefore ordered that the amended petition (ECF No. 17) is denied in its entirety.

It is further ordered that a certificate of appealability is granted as to ground 3.

///
///
///
///
///

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 11th day of May 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE